# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 17, 2017 Session

## DONEL AUTIN, ET AL. v. WILLIAM GOETZ

**Appeal from the Circuit Court for Shelby County**
**No. CT-002531-10  Gina C. Higgins, Judge**

———————————————————

**No. W2016-00099-COA-R3-CV – Filed February 22, 2017**

———————————————————

The trial court entered a protective order under Rule 26.03 of the Tennessee Rules of Civil Procedure while the case was ongoing. After the plaintiffs filed a notice of voluntary dismissal, the trial court entered an order confirming the dismissal and extending the protective order "in perpetuity." The defendant did not appeal the final order, but years later filed a motion to modify the protective order. The trial court denied the motion as barred by the doctrine of res judicata. On appeal, the defendant argues that the trial court lacked subject matter jurisdiction to extend the protective order after plaintiffs nonsuited their case. As an issue of first impression, we conclude that the trial court retained jurisdiction to extend and modify its previously entered protective order notwithstanding the voluntary dismissal of the underlying action. We further hold that modification of existing protective orders is authorized by the holding in ***Ballard v. Herzke***, 924 S.W.2d 652, 658 (Tenn. 1996); accordingly, we vacate the trial court's denial of defendant's motion to modify and remand for reconsideration in light of our supreme court's established precedent.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; and Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which JOHN W. MCCLARTY, and ARNOLD B. GOLDIN, JJ., joined.

Van R. Irion, Knoxville, Tennessee, for the appellant, William Goetz.

J. Lewis Wardlaw, Memphis, Tennessee, for the appellees, Donel Autin, and Dana Autin.

## OPINION

### BACKGROUND

On March 12, 2010, Plaintiffs/Appellees Donel Autin and Dana Autin (together with Mr. Autin, "Appellees"), a married couple, filed a verified complaint against Defendant/Appellant William Goetz. The complaint alleged that Mr. Goetz was guilty of defaming, slandering, and intentionally inflicting emotional distress on Appellees by falsely communicating to third parties that Mr. Autin had an adulterous sexual relationship with Mr. Goetz's former live-in girlfriend ("Girlfriend"). In addition to damages, Appellees sought an immediate temporary restraining order, a temporary injunction, and a permanent injunction against any further defamation.

The parties thereafter engaged in a period of discovery, which was marked by repeated disputes over the information sought. For example, on or about September 21, 2010, Mr. Goetz filed notices to take the depositions of Mr. Autin's employer, International Paper Company ("International Paper") and Appellees' church, Cordova Presbyterian Church. Appellees responded by filing a motion to quash the subpoenas, arguing that the goal of the subpoenas was not to gain relevant information but to further harm Mr. Autin's reputation at his workplace and church. On September 22, 2010, Appellees also filed a motion for default judgment, citing Mr. Goetz's failure to respond to their complaint. On October 7, 2010, the parties entered into a consent order in which, inter alia, Mr. Goetz agreed to withdraw the offending subpoenas and reissue them to be more narrowly tailored and to file an answer or other responsive pleading by October 15, 2010.

The parties thereafter filed notices to take video depositions of each other. On October 13, 2010, Appellees filed a motion for a protective order sealing the transcripts, audio and video recordings, and exhibits of Appellees' depositions. In their motion, Appellees insisted that good cause supported the request because of Mr. Goetz's alleged history of defaming Appellees.

On October 15, 2010, Mr. Goetz filed a motion to dismiss Appellees' complaint, which motion was accompanied by a memorandum of law. Therein, Mr. Goetz argued that Appellees' complaint failed to state a claim upon which relief could be granted because the complaint lacked sufficient specificity to support a permanent injunction and Appellees "have admitted the truth of the purportedly defamatory statements, thereby negating an essential element of their purported slander claim." Mr. Goetz further argued that the conduct complained of in the complaint did not rise to the level necessary to sustain an intentional infliction of emotional distress claim.

Mr. Goetz filed a response to Appellees' request for a protective order on October 27, 2010. Mr. Goetz noted that no court presiding over the case had ever granted such a restriction despite repeated requests for a temporary restraining order by Appellees. Therefore, Mr. Goetz contended that the requested protective order was merely another "attempt to conceal the frivolous nature of their public[ly] sworn complaint[.]" On the same day, Mr. Goetz filed the video deposition of Appellees with the trial court.

On November 5, 2010, the trial court entered an order temporarily sealing "the entire case." Specifically, the trial court ordered that is was:

> temporarily sealing this entire case, pending a further order which may be entered at the conclusion of this case, either sua sponte or upon motion by one of the parties. Until the conclusion of this case, and until such time as an order removing the seal on or related to this case is entered, all documents filed in this matter shall be filed with the Clerk of the Circuit Court as "**FILED UNDER SEAL**."

Thus, the trial court indicated that the protective order could continue until both the conclusion of the case **and** the entry of an order removing the seal.

Appellees filed a detailed response in opposition to Mr. Goetz's motion to dismiss on November 15, 2010, denying that their complaint failed to state a claim upon which relief could be granted. Eventually, on December 17, 2010, the trial court entered an order denying both Mr. Goetz's motion to dismiss and Appellees' request for the issuance of a temporary injunction. Therein the trial court noted that it had previously admonished the parties to "stop it, cut it out," and that it was the trial court's belief that any allegedly offending behavior had terminated as of that admonishment. The trial court further indicated that it would "hammer . . . the person creating this mess" with sanctions if poor behavior continued. The trial court also set the matter for trial on February 28, 2011.

The parties' discovery disputes continued largely unabated. Each party filed motions to compel directed toward the other. Appellees also filed motions to quash subpoenas duces tecum served on AT&T Global Communications Services ("AT&T") and Verizon Cellico Partnership ("Verizon"), arguing that the requests were overly broad and involved irrelevant information with the "transparent goal of harming" Appellees. In the alternative, Appellees requested that any information obtained as a result of the subpoenas be placed under a protective order. On February 18, 2011, the trial court entered two orders regarding the parties' discovery disputes. First, the trial court partially granted a motion to compel filed by Appellees, requiring Mr. Goetz to timely respond to certain outstanding discovery. Second, the trial court partially granted Appellees' motion regarding the requested discovery from AT&T and Verizon by entering the following protective order:

> (a) Unless expressly provided below in Section (2)(c), all documents or other information (hereinafter "Documents") received by Counsel for Defendant William Goetz ("Goetz") from AT&T and/or Verizon as a result of the subject subpoenas and/or all summaries of the Documents bearing any identifiable information are hereby ordered to be conspicuously marked by such counsel and held as ATTORNEYS EYES ONLY; and shall not be

shared by Goetz's counsel for any reason or in any manner with Goetz, or anyone else, at any time during the pendency of or after the conclusion of this matter, except in redacted form as set forth in Section 2(c);

(b) This order shall remain in effect in the event Goetz changes his current counsel. In the event, Goetz should ever represent himself in a pro se capacity, the Documents shall not be shared in any manner with Goetz, or anyone else, but shall be returned to counsel for Plaintiffs Donel Autin and Dana Autin prior to the entry of an order allowing Goetz's former counsel to withdraw;

(c) Notwithstanding Section (2)(a) above, Goetz may be provided with redacted or summarized versions of the Documents containing only records or information generated between 2008 and 2010 related to communications — calls, emails, text messages, communications logs — between (as indicated by their respective telephone numbers):

i) Donel Autin and William Goetz and/or [Girlfriend];

ii) Dana Autin and William Goetz and/or [Girlfriend]; and

iii) Dana Autin and Donel Autin. (This allowance, although consented to in this limited capacity, is not meant to be a waiver of the spousal privilege in any other regard);

(d) Except as otherwise provided in this Order, neither Goetz nor counsel for Goetz shall attempt to make any contact in any manner with the persons whose identity or contact information is learned or discovered through or by the Documents, with the exception of contacting those persons specifically named by Plaintiffs Donel Autin and Dana Autin in the Verified Complaint, or other persons who have been specifically identified by the parties in formal discovery as potentially having knowledge of the facts surrounding this case, or whose identity and contact information is known separately from the Documents.

(e) Should counsel for Goetz be unclear about the identity of any of the communications or communicants contained in the Documents, should they desire further information about additional communications between Donel Autin, Dana Autin and persons not expressly identified in Section (2)(c), or should they desire to contact any persons restricted by this order, counsel for Goetz shall first submit a written request to counsel for Plaintiffs Donel Autin and Dana Autin for review and discussion. If no agreement can be made as to the provision of such additional information or allowance, counsel for Goetz and counsel for Plaintiffs Donel Autin and Dana Autin shall approach the Court and submit same for the Court's

review and determination as to whether such information should be provided by Plaintiffs in expansion of this order.

(f) Following the conclusion of this action and within five days of the entry of a final order, all of the Documents shall be returned to counsel for Plaintiffs Donel Autin and Dana Autin.

On February 25, 2011, the trial court likewise entered an order granting in part a pending motion to compel on behalf of Mr. Goetz. The trial court also entered an order granting a motion to continue the trial date. The parties, however, continued to engage in discovery disputes and the trial court entered additional orders regarding the production and disclosure of information.

On or about March 11, 2011, Appellees filed a motion for relief from the trial court's order requiring them to produce text messages, alleging that they had produced all information that was readily available. Mr. Goetz responded in opposition on May 31, 2011. The parties entered into a consent order on July 21, 2011, allowing certain attorneys access to the court's jacket but reiterating that the trial court's earlier protective order remained in place. On July 26, 2011, the trial court entered an order finding that Appellees had "made good faith efforts to retrieve information ordered by the [c]ourt, but have not been able to do so." Because no evidence had been presented demonstrating that Appellees "deliberately set about to destroy" the cellphones at issue, the trial court ruled that Appellees would be relieved from producing the information previously ordered. The trial court noted, however, that its decision did not prevent Mr. Goetz from "fully investigating and developing a spoliation theory[.]"

Very little activity occurred in this matter for the next six months. Eventually, on February 29, 2012, Mr. Goetz filed a motion to dismiss Appellees' lawsuit on the basis of spoliation of evidence. In his accompanying memorandum, Mr. Goetz alleged that Appellees' inability to retrieve all text messages ordered to be produced by the court, as Appellees alleged in their March 11, 2011 motion for relief from discovery, was the result of Appellees' voluntary decision to "discard" Mr. Autin's cellphone after using it to secretly record conversations with Mr. Goetz prior to the filing of the underlying lawsuit. Mr. Goetz alleged that because Appellees were aware that a lawsuit was forthcoming, and in fact were the party to initiate the lawsuit, they were under a heightened duty to preserve all relevant information. According to Mr. Goetz, Appellees' failure to produce all text messages as ordered was the result of spoliation and was of a nature and character necessitating dismissal of the lawsuit. Mr. Goetz's motion and memorandum were accompanied by several documents that Mr. Goetz asserted supported his spoliation theory.

Appellees filed no response in opposition to Mr. Goetz's motion. Instead, on March 9, 2012, Appellees filed a notice of voluntary nonsuit, asking that their case be voluntarily dismissed without prejudice. On the same day, the trial court entered an order

of voluntary dismissal without prejudice of Appellees' case. The trial court noted, however, that the dismissal would be subject to the following orders:

(1) It appearing to the Court that good cause has been shown, the entire case shall remain sealed in perpetuity, and all documents filed in this matter shall remain under the control of the Clerk of the Circuit Court and shall remain FILED UNDER SEAL; and

(2) All documents produced subject to the Court's February 18, 2010 protective order (attached hereto at Exhibit A and incorporated herein by reference) shall remain subject to and under control of said protective order as follows:

All documents or other information (hereinafter "Documents") received by Counsel for Defendant William Goetz ("Goetz") from AT&T and/or Verizon as a result of the subject subpoenas and/or all summaries of the Documents bearing any identifiable information, which Documents were previously ordered to be conspicuously marked and held by counsel for Goetz as ATTORNEYS EYES ONLY and which were ordered not to be shared for any reason or in any manner with Goetz, or anyone else, at any time during the pendency of or after the conclusion of this matter; shall be returned to counsel for [Appellees] within five (5) days of the entry of this Order, with all notes or summaries of the Documents bearing any identifiable information to be destroyed or returned to counsel for [Appellees] at the discretion of counsel for Goetz.

Mr. Goetz filed a motion to alter or amend the trial court's order of dismissal on April 5, 2012. In his accompanying memorandum, Mr. Goetz asserted, as is relevant to this appeal, that the trial court should lift the seal on the matter to allow Mr. Goetz to defend himself in the court of public opinion regarding what he called Appellees' "frivolous and oppressive litigation." In the alternative, Mr. Goetz requested that the trial court "limit and define the scope" of the protective order. Appellees responded in opposition to Mr. Goetz's motion to alter or amend on April 12, 2012, arguing that the seal was proper because good cause existed to support the trial court's protective order.

The trial court entered an amended order of voluntary dismissal without prejudice on August 27, 2012. Therein, the trial court modified the seal on the proceedings to provide as follows:

(1) It appearing to the Court that good cause has been shown, the entire case shall remain sealed in perpetuity, and all documents filed in this matter shall remain under the control of the Clerk of the Circuit Court and shall remain FILED UNDER SEAL in this Court, except that the orders of this Court (listed at Appendix A hereto) shall not be placed under the seal and shall remain of public record; and

(2) All documents produced subject to the Court's February 18, 2010 protective order, which is incorporated herein by reference, shall remain subject to and under control of said protective order, with the following amendment: All documents or other information received by Counsel for Defendant William Goetz from AT&T and/or Verizon as a result of subpoenas and/or all summaries of the documents bearing any identifiable information, which documents were previously ordered to be conspicuously marked and held by counsel for Goetz as ATTORNEYS EYES ONLY and which were ordered not to be shared for any reason or in any manner with Goetz, or anyone else, at any time during the pendency of or after the conclusion of this matter, shall not be destroyed or returned to Plaintiffs' counsel as previously ordered, but shall remain conspicuously marked and held by counsel for Goetz as ATTORNEYS EYES ONLY, and shall not to be shared for any reason or in any manner with Goetz, or anyone else, at any time during the pendency of or after the conclusion of this matter.

Although the initial case was concluded, the parties' dispute was far from over. Approximately one month prior to the initial order voluntarily dismissing the case, on May 18, 2012. Mr. Goetz filed a separate lawsuit against Appellees and International Paper for malicious prosecution, abuse of process, intentional infliction of emotional distress, and civil rights violations ("malicious prosecution lawsuit"). Therein, Mr. Goetz alleged that Appellees' initial lawsuit lacked a reasonable basis and was solely meant to obscure Mr. Autin's extra-marital affair with Girlfriend. According to the complaint, International Paper was liable through the acts of Mr. Autin, as well as due to International Paper's alleged wrongful and intentional concealment of cell phone records that were relevant to the initial lawsuit. The malicious prosecution lawsuit proceeded separately from the initial case and is not part of this appeal.

Additionally, a little over a week after the trial court entered the amended order of dismissal, on September 4, 2012, Appellees filed a petition for contempt against Mr. Goetz for failure to comply with the trial court's protective order by sending a letter to the Shelby County District Attorney General and International Paper containing information gleaned from discovery, which information was arguably sealed by the ongoing protective order over the matter. Appellees argued that Mr. Goetz's failure to comply with the protective order constituted willful contempt.

On the same day, Mr. Goetz responded in opposition and filed his own counter-petition for contempt against Appellees. Mr. Goetz denied that he willfully violated the trial court's protective order or that he "propogat[ed] any documents that were sealed by the [c]ourt." On the contrary, Mr. Goetz alleged that Mr. Autin had mailed an anonymous letter to Mr. Goetz's immediate family and that Appellees had released certain documents to International Paper for purposes of the malicious prosecution case that were subject to the trial court's seal in the underlying matter, both of which Mr. Goetz asserted were

willful violations of the trial court's protective order. The parties thereafter engaged in additional discovery.

Eventually, on January 4, 2013, the trial court entered an order holding that both parties' contempt petitions were civil in nature, as neither "pray[ed] for criminal contempt." However, the trial court noted that because both petitions alleged past contemptuous acts, the trial court ruled that the allegations "cannot be fairly the subject of civil contempt." The trial court did not dismiss the petitions, however, but "decline[d] to rule on" them, "holding both petitions in abeyance until such time as the [c]ourt determines whether . . . to bring sua sponte criminal contempt charges against either or both of the parties." The trial court also clarified that the "case was sealed for a reason"—to protect Appellees' minor children—and that neither party appealed the trial court's order sealing the case. As such, the trial court ruled that:

> 3. To say that the case is under seal and the pleadings are under seal, but that the parties can at their discretion discuss or publicize what's in those pleadings would render the orders of the [c]ourt null, void and of no effect.
>
> 4. With the following limited exceptions, the parties should leave what is in this matter alone:
>
> > a. The parties are allowed to use the pleadings and other documents from this case for the limited purpose of prosecuting and defending the pending matter in Division 2 (No. Ct-002218-12). This limited exception to the seal is not intended to and does not authorize the parties to use or discuss the sealed materials outside of the Division 2 litigation.
> >
> > b. The parties are allowed to use the pleadings and other documents from this case for the limited purpose of facilitating International Paper Co.'s pending investigation of Donel Autin until such time as that investigation is completed. This limited exception to the seal is limited to International Paper "individuals with a need to know" and is not intended to and does not authorize the parties to use or discuss the sealed materials outside of the International Paper investigation. Absent a further order of this [c]ourt, Mr. Goetz may not speak at the International Paper Co., Inc. annual shareholders meeting about any matters sealed in this Court
>
> 5. The [c]ourt instructs all parties that under no circumstances do they have permission to discuss the case beyond what is expressly allowed in this order.

The trial court's order was apparently sufficient to mollify the parties for some time. On May 22, 2015, however, Mr. Goetz filed a motion to modify the trial court's protective order, arguing that circumstances had changed such that allowing public disclosure of the facts at issue would no longer create such a risk of harm to Appellees'

minor children. Specifically, Mr. Goetz noted that Appellees had moved out-of-state and their children likely had knowledge of the litigation and allegations made therein. According to Mr. Goetz, modification of the protective order was also necessary to clear his reputation in the community, which had been harmed by Appellees' allegations. Mr. Goetz also asserted that much of the information he gleaned in the case was obtained outside of formal discovery processes and that the seal "implicates the highest scrutiny under the First Amendment." On May 27, 2015, Mr. Goetz filed a notice setting his motion for hearing on July 13, 2015.

Not surprisingly, Appellees filed a response in defense of the trial court's protective order on June 26, 2015. Therein, Appellees characterized the protective order as necessary to ensure that "the pleadings, deposition testimony, and other discovery filed or exchanged therein could be used by [Mr.] Goetz in his continuing attack on [Appellees] and their children." Appellees further argued that the trial court was well within its power under Rule 26.03 to enter the protective order and that Mr. Goetz could show no abuse of discretion in the trial court's decision. Appellees also asserted that the trial court's protective order was far more limited than that portrayed by Mr. Goetz, sealing none of the trial court's orders, but only sealing certain "sensitive discovery." Appellees included a list of all pleadings that they asserted should remain sealed, as well as "all documents exchanged or received during the conduct of discovery in this case, including without limitation all unfiled deposition transcripts and all documents that are specifically addressed in previous protective orders of th[e] [trial] [c]ourt."

On August 26, 2015, the trial court entered an order "declin[ing] [Mr. Goetz's] request for an evidentiary hearing, if at all," until the conclusion of Mr. Goetz's malicious prosecution case, which the trial court noted was on appeal.[1] On September 17, 2015, Mr. Goetz filed a motion for sanctions against Appellees pursuant to Rule 11 of the Tennessee Rules of Civil Procedure. Therein, Mr. Goetz alleged that Appellees made false allegations against Mr. Goetz in their response to his motion to modify the protective order. As a remedy, Mr. Goetz sought attorney's fees not only incurred in the modification of the protective order, but all fees "incurred by Mr. Goetz in defense of [Appellees'] fraudulent lawsuit." After Appellees responded in opposition to the motion for sanctions, Mr. Goetz chose to withdraw his motion. The trial court thereafter entered an order denying the motion as moot.

Finally, the trial court entered an order on December 16, 2015, denying Mr. Goetz's request to modify the protective order. Therein, the trial court noted its earlier ruling denying Mr. Goetz's request for an evidentiary hearing and further ruled:

---

[1] Mr. Goetz's malicious prosecution case was dismissed by the trial court for failure to state a claim upon which relief could be granted as to all of the asserted claims against Appellees. *See Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *3 (Tenn. Ct. App. Feb. 10, 2016), *perm. app. denied* (Tenn. June 24, 2016). International Paper was also dismissed as a party by agreement. *Id.* at *1 n.1. This Court affirmed the dismissal of the claims against Appellees. *Id.* at *7–12. The Tennessee Supreme Court subsequently denied permission to appeal. *Id.* at *1.

1. This case was filed in 2010. The case has now been closed effectively almost three years. There was no appeal from the rulings in this case.

2. Mr. Goetz filed a second lawsuit in Division II of the Circuit Court, which was dismissed on motions and is now on appeal. Mr. Goetz did not choose to file an appeal that said he disagreed with anything this [c]ourt did. He simply chose to file a separate lawsuit.

3. This [c]ourt[’s] rulings are res judicata, and the [c]ourt is not going to accept the request to modify its prior rulings.

4. The pleadings were sealed[] but not the orders. The parties clarified their intent in two orders in the litigation in 2012.

5. Mr[.] Goetz was represented by counsel[.] He has had an opportunity to have his day in court, both in Division IV and in Division II. The [c]ourt believes he took advantage of that opportunity to the extent he wanted to.

6. Mr. Goetz had an opportunity to file an appeal. He elected not to do that. The [c]ourt is not inclined, three years later, to deal with those issues again.

Mr. Goetz thereafter filed a notice of appeal to this Court.[2]

### ISSUES PRESENTED

---

[2] While this appeal was pending, this Court entered an order directing the parties to show cause why this appeal should not be dismissed for failure to comply with Rule 3 of the Tennessee Rules of Appellate Procedure. Specifically, we noted that the trial court had not denied the parties' cross-motion for contempt, but merely held the motion in abeyance pending resolution of Mr. Goetz's separate malicious prosecution case. Rule 3 provides that if multiple parties or multiple claims are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final or appealable. *See* Tenn. R. App. P. 3. Because this Court only has subject matter jurisdiction over final orders, except where otherwise provided, see **Bayberry Assoc. v. Jones**, 783 S.W.2d 553 (Tenn. 1990), we therefore questioned whether this Court properly attained jurisdiction over the subject matter of this appeal. Both parties filed responses to this Court's order asserting that this Court had subject matter jurisdiction over the trial court's December 16, 2015 order denying Mr. Goetz's motion to modify the protective order. Mr. Goetz noted that because the contempt petitions rested on the foundation of the protective order, his argument that the protective order was improperly entered would affect the continued viability of the contempt petitions. Appellees essentially argued that the contempt petitions were ancillary to the question of whether the protective order should be modified and therefore were not a bar to this appeal. *See generally* **Poff v. Poff**, No. 01-A-01-9301-CV00024, 1993 WL 73897, at *2 (Tenn. Ct. App. Mar. 17, 1993) ("Contempt proceedings commenced after the entry of an otherwise final order in the underlying case should be viewed as independent proceedings. Accordingly, they are not part of the subject matter of the underlying case and are not among the issues that must be resolved before an otherwise final order in the underlying case will be considered final for the purposes of Tenn. R. App. P. 3(a)."). On September 20, 2016, this Court entered an order ruling that "the order appealed is a final judgment and that this Court does have jurisdiction to hear this appeal." What exactly the Court attained jurisdiction over, however, is largely the subject of this appeal.

Mr. Goetz raises three issues, which are taken and slightly restated from his appellate brief:

> 1.     Does a trial court retain jurisdiction to enter a permanent injunction in favor of a plaintiff after the plaintiff files a notice of nonsuit?
> 2.     Did the trial court err by granting relief of a permanent injunction after applying a legal standard properly limited to protective orders?
> 3.     Did the trial court err by refusing to consider evidence of changed circumstances material to an ongoing order?

## DISCUSSION

### I.

As an initial matter, we must first determine whether this Court has subject matter jurisdiction to consider this appeal. Here, the underlying matter was concluded on August 27, 2012, when the trial court issued its amended order voluntarily dismissing the case without prejudice. Neither party filed an appeal to this Court of the trial court's order. Accordingly, it became final thirty days later and could no longer be appealed. *See Am. Steinwinter Inv'r Grp. ex rel. Am. Steinwinter v. Am. Steinwinter*, 964 S.W.2d 569, 571 (Tenn. Ct. App. 1997) ("The 30-day rule for notices of appeal is mandatory and jurisdictional and may not be waived[.]").

The Tennessee Rules of Civil Procedure provide an outlet for parties seeking relief from a final judgment—Rule 60.02. Under Rule 60.02, parties may seek relief from a final judgment on the basis of, *inter alia*, mistake, inadvertence or fraud. *See* Tenn. R. Civ. P. 60.02(1)&(2). These motions must be made within one year of the date of the trial court's final judgment. In addition, parties may seek relief on the basis that, *inter alia*, the underlying judgment is void, that the judgment has been satisfied, or "any other reason justifying relief from the operation of the judgment." *See* Tenn. R. Civ. P. 60.02(3)–(5). These motions need only be filed "within a reasonable time." Tenn. R. Civ. P. 60.02.

Much like his decision not to appeal the August 27, 2012 judgment, Mr. Goetz also chose not to file any Rule 60.02 motion for relief from that judgment once it became final. Instead, he merely filed a motion seeking to alter the judgment based upon changed circumstances. The trial court denied the motion, finding that the order at issue had become final three years prior. Now on appeal, for the first time, Mr. Goetz raises an additional argument: that the trial court was without jurisdiction to enter any order continuing the protective order once Appellees filed their notice of non-suit. Because this argument implicates the trial court's subject matter jurisdiction, Mr. Goetz argues that this Court must consider the argument notwithstanding his failure to timely raise the argument in the trial court.

We agree. As the Tennessee Supreme Court explained:

Subject matter jurisdiction involves the court's lawful authority to adjudicate a controversy brought before it. ***Chapman v. DaVita, Inc.***, 380 S.W.3d 710, 712 (Tenn. 2012); ***Meighan v. U.S. Sprint Commc'ns Co.***, 924 S.W.2d 632, 639 (Tenn. 1996). Subject matter jurisdiction is conferred by statute or the Tennessee Constitution; the parties cannot confer it by appearance, plea, consent, silence, or waiver. ***In re Estate of Trigg***, 368 S.W.3d 483, 489 (Tenn. 2012). Any order entered by a court lacking jurisdiction over the subject matter is void. ***Id.*** Therefore, subject matter jurisdiction is a threshold inquiry, which may be raised at any time in any court. ***Id.***

***Johnson v. Hopkins***, 432 S.W.3d 840, 843–44 (Tenn. 2013). As such, where a court acts without subject matter jurisdiction, the resulting order is void and "may be attacked at any time." *See* ***Turner v. Turner***, 473 S.W.3d 257, 279 (Tenn. 2015) (noting some exceptions to the general rule not argued in this case). The general rule is, of course, equally applicable in the context of a protective order; this Court has specifically held that a protective order entered without subject matter jurisdiction is void. *See* ***Adams v. The Tennessean***, No. M2001-00662-COA-R3-CV, 2002 WL 192575, at *6 (Tenn. Ct. App. Feb. 7, 2002) (holding, inter alia, that the trial court's protective order was void because the trial court never attained subject matter jurisdiction over the claim as no complaint was ever filed; instead the "lawsuit" was instituted merely from the filing of a motion for protective order without any underlying lawsuit pending before the court). Consequently, we will address Mr. Goetz's argument that the trial court lacked jurisdiction to enter an order extending the protective order regardless of the fact that Mr. Goetz failed to raise this issue in prior proceedings.

## II.

To determine the effect, if any, of the Appellees' voluntary dismissal on the trial court's jurisdiction to enter a continuing protective order in this case, we first consider the basis for the protective order. We begin first by noting that the right to open courts is enshrined in Tennessee's Constitution. *See* Tenn. Const. art. I, § 17 ("That all courts shall be open[.]"). Judicial proceedings and judicial records are therefore presumptively open. *See* ***State v. Drake***, 701 S.W.2d 604, 607–08 (Tenn. 1985); ***In re NHC-Nashville Fire Litig.***, 293 S.W.3d 547, 561 (Tenn. Ct. App. 2008); ***Knoxville News-Sentinel v. Huskey***, 982 S.W.2d 359, 362–63 (Tenn. Crim. App. 1998). The Tennessee Supreme Court has cautioned that restrictions on public access to judicial records must be "'based on findings that closure is essential to preserve higher values'" and "'narrowly tailored to serve that interest.'" ***Drake***, 701 S.W.2d at 607 (Tenn. 1985) (quoting ***Press-Enterprise Co. v. Superior Court***, 464 U.S. 501, 506, 104 S. Ct. 819, 824 78 L. Ed. 2d 629 (1984)). Thus, "[t]he common law right of access to judicial records is not absolute." ***In re NHC-Nashville***, 293 S.W.3d at 561. Rather, "'[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become vehicles for improper purposes,' such as promoting public scandal or publication of

libelous statements." ***Id.*** (quoting ***Nixon v. Warner Commc'ns, Inc.***, 435 U.S. 589, 598, 98 S. Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978)).

This Court has previously explained that the "trial court's inherent supervisory authority over its own records and files" as described above, served as "the genesis of Rule 26.03 of the Tennessee Rules of Civil Procedure." ***In re NHC-Nashville***, 293 S.W.3d at 561. Rule 26.03 provides, in relevant part:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Accordingly, protective orders under Rule 26.03 "limit access to certain documents or information, or withhold documents from public view." ***In re NHC-Nashville***, 293 S.W.3d at 561 (citing 20 Am. Jur. 2d *Courts* § 30 (2005)). As the Tennessee Supreme Court explained:

> Protective orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings. In addition, protective orders are often used by courts as a device to aid the progression of litigation and to facilitate settlements. Protective orders strike a balance, therefore, between public and private concerns.

***Ballard v. Herzke***, 924 S.W.2d 652, 658 (Tenn. 1996) (citing ***Pansy v. Borough of Stroudsburg***, 23 F.3d 772, 786 (3d Cir. 1994)). Furthermore, according to the Tennessee Supreme Court: "It is well-settled that a trial court retains the power to modify or lift a protective order that it has entered." ***Ballard***, 924 S.W.2d at 658.

As has previously been the case, the trial court in this case ordered "two types of protections":

> Some documents were ordered by the trial court to be filed "under seal," which generally means that the document in question is filed with the court clerk as part of the court's record in the case, but the clerk and the parties are prohibited from showing the document to anyone not a party to the lawsuit. Other documents at issue in this case were produced by one party to the opposing party, usually in response to a discovery request, but were never filed with the court clerk. The trial court issued a protective order prohibiting the parties from disclosing the unfiled discovery documents outside the range of persons described in the order.

*In re NHC-Nashville*, 293 S.W.3d at 561 (footnotes omitted).

Mr. Goetz does not dispute the trial court's authority under Rule 26.03 to enter a protective order under appropriate circumstances in ongoing litigation.[3] Instead, Mr. Goetz argues that Appellees' notice of nonsuit deprived the trial court of subject matter jurisdiction to enter any orders other than an order of voluntary dismissal.[4] In Tennessee, the plaintiff has a right to voluntarily dismiss his or her lawsuit under certain circumstances, which are outlined in Rule 41.01 of the Tennessee Rules of Civil Procedure:

> (1) Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties, and if a party has not already been served with a summons and complaint, the plaintiff shall also serve a copy of the complaint on that party; or by an oral notice of dismissal made in open court during the trial of a cause; . . . .
>
> * * *
>
>  (3) A voluntary nonsuit to dismiss an action without prejudice must be followed by an order of voluntary dismissal signed by the court and entered by the clerk. The date of entry of the order will govern the running of pertinent time periods.

---

[3] Mr. Goetz does argue, however, that the trial court's order does not constitute a Rule 26.03 protective order, but rather a permanent injunction. Because of the limits on our subject matter jurisdiction, we do not reach this issue, as discussed in detail, *infra*.

[4] We use the terms "voluntary dismissal" and "nonsuit" interchangeably. *Ewan v. Hardison Law Firm*, 465 S.W.3d 124, 141 n.3 (Tenn. Ct. App. 2014).

Tenn. R. Civ. P. 41.01(1), (3). Consequently, "[a] plaintiff's right to voluntary dismissal without prejudice is subject to the exceptions expressly stated in Rule 41.01(1) as well as to an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right." *Lacy v. Cox*, 152 S.W.3d 480, 484 (Tenn. 2004) (footnote omitted) (citing *Anderson v. Smith*, 521 S.W.2d 787, 790 (Tenn. 1975)). In addition,

> A plaintiff is further limited to taking no more than two nonsuits without prejudice, Tenn. R. Civ. P. 41.01(2), and nonsuit cannot be taken more than one year after an initial dismissal. As long as none of these exceptions and limitations serve[s] to restrict dismissal, Rule 41.01(1) affords a plaintiff the free and unrestricted right to voluntary dismissal without prejudice before the jury retires. *Rickets v. Sexton*, 533 S.W.2d 293, 294 (Tenn. 1976).

*Lacy*, 152 S.W.3d at 484. Thus, "in most situations a voluntary non-suit may be taken **as a matter of right**. However, such is not the case when a motion for summary judgment is pending." *Clevenger v. Baptist Health Systems*, 974 S.W.2d 699, 700 (Tenn. Ct. App. 1997) (emphasis added). The Tennessee Supreme Court has also held that "under a proper set of circumstances, the Court has the authority to permit a voluntary dismissal, notwithstanding the pendency of a motion for summary judgment." *Stewart v. Univ. of Tenn.*, 519 S.W.2d 591, 593 (Tenn. 1974). Here, no motion for summary judgment was pending at the time Appellees filed their notice of nonsuit. Accordingly, neither party disputes that Appellees were entitled to voluntarily dismiss their action as a matter of right.

Mr. Goetz argues that, because Appellees were entitled to voluntarily dismiss their action as of right, the trial court lost jurisdiction to enter any further orders regarding the case. In support, Mr. Goetz cites the Tennessee Supreme Court's decision in *Rickets v. Sexton*, 533 S.W.2d 293 (Tenn. 1976). In *Rickets*, the plaintiffs filed a "motion for voluntary dismissal" one day prior to the scheduled trial. *Id.* at 294. The trial court "disallowed" the motion, finding that it would be prejudicial to one of the defendants. *Id.* The Tennessee Supreme Court reversed, holding that the ability to take a nonsuit is a "[f]ree and unrestricted" right belonging to the plaintiff. *Id.* Further, the Tennessee Supreme Court clarified that the right to take a nonsuit is not dependent on any action of the trial court:

> The rule specifies that a plaintiff 'shall have the right to take a voluntary nonsuit or to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause[.'] This portion of the rule is not dependent upon the determination of the trial judge. The lawyer for the plaintiff is the sole judge of the matter and the trial judge has no control over it. It is not necessary that he approve the action of plaintiff's counsel by signing any order; nor may he nullify the rules by an order 'disallowing' the nonsuit. All that is required to dismiss prior to the trial, in

the absence of the existence of any of the exceptions above noted, is the filing of a written notice of dismissal.

*Id.* (emphasis added). Thus, "action on the part of the trial judge is simply not required under **Rickets** for the plaintiff to 'take' a nonsuit." **Ewan v. Hardison Law Firm**, 465 S.W.3d 124, 131 (Tenn. Ct. App. 2014) (citing *Black's Law Dictionary* 1590 (9th ed. 2009) (defining "take," as, *inter alia*, "[t]o claim one's right under")). Rather, the trial court must simply enter a "pro forma order, filed after plaintiff's nonsuit, to the end that the dismissal may be reflected upon the minutes of the court." **Evans v. Perkey**, 647 S.W.2d 636 (Tenn. Ct. App. 1982); *see also* **Parker v. Vanderbilt Univ.**, 767 S.W.2d 412, 422 n.3 (Tenn. Ct. App. 1988) (describing the necessary order as merely "confirmatory").

Mr. Goetz asserts that, based upon the holding in **Rickets**, "[t]he dismissal of a nonsuited case occurs instantaneously when a plaintiff delivers the notice of nonsuit." Accordingly, Mr. Goetz contends that "the moment the nonsuit was filed[,] the [trial court] had only very limited authority (and duty) to enter a pro forma ministerial order acknowledging [Appellees'] decision to nonsuit." Respectfully, we cannot agree with either contention.

First, although we do not question the well-settled principle that a plaintiff generally has the unqualified right to take a nonsuit prior to the filing of any motion for summary judgment by the defendant, the mere exercise of that right does not, ipso facto, lead to the conclusion that the nonsuit is accomplished immediately upon delivery of the notice. A similar issue was presented to the Tennessee Supreme Court in **Green v. Moore**, 101 S.W.3d 415 (Tenn. 2003). In **Green**, the parties disputed whether "the thirty-day appeal period commenced on . . . the date they filed the notice of voluntary dismissal" or the date the order of nonsuit was entered by the trial court. *Id.* at 418. The Tennessee Supreme Court concluded that the appeal period ran not from the notice of nonsuit filed by the plaintiff but from the date of the order confirming the nonsuit entered by the trial court. As the Tennessee Supreme Court explained:

> The language in **Rickets** which arguably suggests that filing a notice of voluntary dismissal constitutes an adjudication for purposes of commencing the Rule 4(a) thirty-day appeal period is non-binding dicta. **Rickets** stands for the proposition that, except in very limited circumstances, a party can take a voluntary nonsuit without permission from the trial court. If filing a notice of voluntary nonsuit was all that was required to conclude an action, the Court of Appeals could then receive the appeal without the trial court ever entering an order or assessing costs. Such a holding would be contrary to common sense and our own precedent. As the Court of Appeals correctly noted in **Evans** [**v. Perkey**, 647 S.W.2d 636 (Tenn. Ct. App. 1982)], a "[c]ourt speaks only through its written judgments, duly entered upon its minutes." **Evans**, 647 S.W.2d at 641; . . . . Accordingly, we conclude that

the unfavorable rulings of the trial court did not become appealable for the appellant until the trial court entered its order . . . confirming that all claims between the parties had been adjudicated.

*Green*, 101 S.W.3d at 419–20 (noting also that Tenn. R. Civ. P. 58 requires the judge's signature on all final judgments). Thus, while the plaintiff had the unqualified right to take a nonsuit, the voluntary dismissal was not actually accomplished until the trial court's signed order confirming the nonsuit was entered. Mr. Goetz's argument that the dismissal occurred "instantaneously" with the notice of nonsuit is therefore unavailing.

We also cannot agree that *Rickets* stands for the proposition that the filing of a notice of nonsuit deprives the trial court of jurisdiction to enter any additional orders in the case other than an order confirming the voluntary dismissal. First, we note that the *Rickets* Court was simply not faced with the question presented in this appeal: the extent of the trial court's jurisdiction after a notice of nonsuit is filed. Rather, the *Rickets* Court was only called upon to answer the question of whether a trial court could deny the plaintiff of the ability to nonsuit their case where the nonsuit was expressly authorized by Rule 41.01. *See Rickets*, 533 S.W.2d at 294. Accordingly, while instructive on the proper interpretation of Rule 41.01, *Rickets* is not dispositive of the question squarely before this Court. Indeed, from our research, it appears that the question of the trial court's jurisdiction to extend a Rule 26.03 protective order after the filing of a notice of nonsuit has never been addressed by Tennessee courts.[5] As such, we look to other cases involving the trial court's jurisdiction after a notice of nonsuit is filed to inform our analysis of this issue.

Although not directly on point, the most closely analogous Tennessee case to the situation presented here is *Salsman v. Texcor Indus., Inc.*, No. W2001-00730-COA-R9-CV, 2002 WL 1838135 (Tenn. Ct. App. July 29, 2002). In *Salsman*, the defendants filed a motion for leave to amend their answer to assert a counter-claim against the plaintiffs. Before the trial court ruled on defendants' motion to amend, however, the plaintiffs filed a notice of nonsuit. *Id.* at *1. The trial court thereafter entered an order of voluntary dismissal, which stated that "no counterclaim had been pled." *Id.* The trial court later

---

[5] Our research has revealed two suggestions that protective orders may be extended beyond the termination of an action. *See In re NHC-Nashville Fire Litig.*, 293 S.W.3d 547, 552 (Tenn. Ct. App. 2008) (involving a protective order entered in a consolidated action and noting that after most of the cases were settled, "the trial court entered an order temporarily sealing the judicial record related to the settled cases"); *In re: Automotive Refinishing Paint Antitrust Litig.*, 2002 WL 34180319 (Davidson Cnty. Cir. Ct. Aug. 12, 2002) (entering a protective order that "survive the termination of this litigation" and noting that the trial court "shall retain continuing jurisdiction to enforce its terms"). Neither case, however, specifically addresses the trial court's subject matter jurisdiction to enter a protective order after the conclusion of the litigation, nor the specific question presented in this appeal regarding the trial court's jurisdiction after a notice of voluntary dismissal has been filed.

reversed course, "vacat[ing] its earlier order of dismissal and grant[ing] the defendants' motion to amend to assert the counterclaim." An interlocutory appeal followed.

On appeal, the plaintiffs raised a similar argument to the one set forth by Mr. Goetz—"that the entire lawsuit, including the proposed counterclaim, was terminated automatically upon their filing of a notice of voluntary dismissal and, therefore, the trial court lacked jurisdiction to grant the defendants' motion to amend to assert the counterclaim." *Id.* at *4. The Court of Appeals disagreed. Citing a Tennessee Supreme Court case in which the court held that a counterclaim was "deemed 'pleaded' within the meaning of the Rule if a motion for leave to amend to add the counterclaim has been filed but not yet granted," see *Frazier v. East Tennessee Baptist Hospital, Inc.*, 55 S.W.3d 925, 930 (Tenn. 2001), the Court of Appeals held that the trial court retained jurisdiction to grant the defendants' motion to amend, which motion was pending at the time the plaintiffs filed their notice of voluntary dismissal. *Salsman*, 2002 WL 1838135, at *4. The Court noted, however, that "[t]he [trial] court has no jurisdiction over a counterclaim filed **after** the suit is voluntarily dismissed[.]" *Id.* (emphasis added) (quoting 24 Am. Jur. 2d *Dismissal* § 86 (1998)).

The situation in this case is arguably similar. Here, the trial court entered a protective order under Rule 26.03 on February 18, 2011. Therein, the trial court specifically ruled that the protective order would continue until a further order was entered, which "may" take place at the conclusion of the litigation. The trial court reiterated that the protective order would remain in effect until both the conclusion of the case and the entry of an order lifting the protection. Accordingly, by its very terms, the protective order would not be terminated simply by the dismissal of the action; an order from the trial court specifically lifting the protections contained therein was necessary. Much like the motion to amend in *Salsman*, the protective order in this case was therefore in place prior to Appellees' notice of non-suit. As such, *Salsman* suggests that the trial court would have continuing jurisdiction over the protective order.

Federal cases interpreting a substantially similar protective order rule also indicate that trial courts have continuing jurisdiction to extend protective orders beyond dismissal of the underlying action. The Tennessee Supreme Court has repeatedly held that while not controlling, federal judicial decisions "'interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule[.]'" *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 430 (Tenn. 2011) (quoting *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000)). The comments to Rule 26.03 note that the rule was adopted "to conform substantially but not identically to Rules 26 through 37, inclusive, of the Federal Rules of Civil Procedure." The comments caution, however, that "[e]ach rule should be compared carefully with its Federal counterpart to determine the differences if any." From our review, Rule 26.03 and Rule 26(c) of the Federal Rules of Civil Procedure are indeed substantially similar regarding the ability of the trial court to

enter a protective order governing discovery.[6] Accordingly, given the lack of Tennessee authority on this issue, federal decisions are persuasive in this Court.

In federal jurisdictions, it appears a matter of no dispute that the trial courts are entitled to extend orders of protection beyond the dismissal of the underlying litigation. As explained by the United States District Court for the First Circuit: "[C]ourts and commentators seem unanimous in finding such an inherent power to modify discovery-related protective orders, **even after judgment**, when circumstances justify." ***Pub. Citizen v. Liggett Grp., Inc.***, 858 F.2d 775, 782 (1st Cir. 1988) (emphasis added). For example, ***Krause v. Rhodes***, 671 F.2d 212 (6th Cir. 1982), involved "the tragic events of May 4, 1970 on the campus of Kent State University." ***Id.*** at 213. At the conclusion of the litigation, the district court vacated the broad protective order that had been in place throughout the proceedings, ordering instead that many of the previously protected documents may be disseminated. The district court, however, required redactions of some documents and ordered that some documents exchanged during discovery be returned from whence they came. ***Id.*** at 216. The Ohio Attorney General argued that the broad protection should remain in place. The United States Court of Appeals for the Sixth Circuit affirmed the trial court's decision, however, noting that the trial court "carefully" followed Supreme Court precedent in considering whether good cause existed to extend

---

[6] Specifically, Rule 26(c) provides, in relevant part:

**(1) In General.** A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> **(A)** forbidding the disclosure or discovery;
> **(B)** specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
> **(C)** prescribing a discovery method other than the one selected by the party seeking discovery;
> **(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> **(E)** designating the persons who may be present while the discovery is conducted;
> **(F)** requiring that a deposition be sealed and opened only on court order;
> **(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
> **(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

the protective order for each class of documents at issue. ***Id.*** at 219 (citing ***Nixon v. Warner Communications, Inc.***, 435 U.S. 589, 597–99, 98 S. Ct. 1306, 1311–12, 55 L. Ed. 2d 570 (1978)). Noting that the protective order at issue was entered after "the Kent State cases had finally come to a total settlement," the Sixth Circuit concluded that the trial court "drafted [its orders] with careful recognition of the competing interests, and he scrupulously followed the applicable law." ***Id.*** Importantly, nothing in the Opinion in any way suggests that the trial court lost jurisdiction to enter a protective order because the litigation was concluded.

Indeed, other cases show that federal trial courts often extend protective orders beyond the conclusion of litigation. *See, e.g.*, ***Foltz v. State Farm Mut. Auto. Ins. Co.***, 331 F.3d 1122, 1128 (9th Cir. 2003) (involving a record sealed after conclusion of the litigation at request of parties); ***Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.***, 62 F.3d 1217, 1219 (9th Cir. 1995) (holding that the trial court retained jurisdiction to modify a protective order that was ongoing despite the settlement of the underlying litigation); ***Leucadia, Inc. v. Applied Extrusion Techs., Inc.***, 998 F.2d 157, 167 (3d Cir. 1993) (involving an intervening party's request to modify a protective order that remained in effect after settlement of the underlying lawsuit); ***Poliquin v. Garden Way, Inc.***, 989 F.2d 527, 535 (1st Cir. 1993) ("Where the district court does protect material during discovery, it is common to provide, as the magistrate judge did here, for post-trial protection including the return or destruction of protected material. In most cases, the lubricating effects of the protective order on pre-trial discovery would be lost if the order expired at the end of the case or were subject to ready alteration."); ***In re Commercial Fin. Servs., Inc.***, 247 B.R. 828, 844 (Bankr. N.D. Okla. 2000) ("A protective order that concerns the preservation of privileges and confidentiality endures beyond the closing of a case[.]"); ***State of Fla. ex rel. Butterworth v. Jones Chemicals, Inc. (Florida)***, No. 90-875-CIV-J-10, 1993 WL 388645, at *2 (M.D. Fla. Mar. 4, 1993) (holding that a protective order, which expressly "survive[d] the termination of this action," did not "exceed the jurisdiction of the [c]ourt"); *see also* ***Rosado v. Bridgeport Roman Catholic Diocesan Corp.***, 276 Conn. 168, 214, 884 A.2d 981, 1008 (Conn. 2005) (holding that protective order may be modified after the conclusion of the litigation and citing ***Ballard***, *supra*, as support); ***Reis v. Iowa Dist. Court for Polk Cnty.***, 787 N.W.2d 61, 66 (Iowa 2010) (holding that the trial court retained jurisdiction to enforce its previously entered protective order despite dismissal of the underlying action); ***State ex rel. Conkle v. Sadler***, 2003-Ohio-4124, ¶ 11, 99 Ohio St. 3d 402, 404, 792 N.E.2d 1116, 1119 ("[A] protective order that on its face survives the underlying litigation continues to be effective even after the underlying case has been dismissed."). As the United States Second Circuit Court of Appeals succinctly stated: "The court's supervisory power does not disappear because jurisdiction over the relevant controversy has been lost. The records and files are not in limbo. So long as they remain under the aegis of the court, they are superintended by the judges who have dominion over the court." ***Gambale v. Deutsche Bank AG***, 377 F.3d 133, 141 (2d Cir. 2004). Accordingly, "[a]s long as a protective order remains in effect, the court that entered the order retains the power to

modify it, even if the underlying suit has been dismissed." ***United Nuclear Corp. v. Cranford Ins. Co.***, 905 F.2d 1424, 1427 (10th Cir. 1990), *cert. denied*, 498 U.S. 1073, 111 S. Ct. 799, 112 L. Ed. 2d 860 (1991).

None of the above cases specifically condition the trial court's jurisdiction to extend a protective order beyond the conclusion of the case upon the method of conclusion, be it after trial, through settlement, or through voluntary dismissal. Indeed, the general rule appears to be true even where the underling action is concluded by voluntary dismissal. For example, in ***Wolters Kluwer Fin. Servs. Inc. v. Scivantage***, No. 07 CV 2352 (HB), 2007 WL 1498114 (S.D.N.Y. May 23, 2007), the plaintiff voluntarily dismissed the action immediately following the defendants' production of tens of thousands of documents as required by the parties' production deadline. *Id.* at *2. Prior to the voluntary dismissal, the district court had issued a protective order designating some documents as "CONFIDENTIAL INFORMATION" or "ATTORNEYS' EYES ONLY INFORMATION" and prohibiting the use of the information contained therein outside of the underlying litigation. *Id.* at *1–2. The plaintiff later filed a motion for permission to use "transcripts of 'attorneys' eyes only' depositions that [p]laintiff had taken of the individual [d]efendants" in a separate action. *Id.* at *1. The district court denied the motion, ruling instead that its protective order remained in place notwithstanding the plaintiffs' action in voluntarily dismissing the underlying litigation. *Id.*

In reaching this result, the district court first examined the issue of its jurisdiction to extend the protective order given the plaintiff's decision to voluntarily dismiss the underlying litigation: "As a threshold matter, this Court retains jurisdiction, pursuant to the explicit retention of jurisdiction in the Protective Order, 'even after termination of this lawsuit,' to 'enforce this order and to make such amendments and modifications to this Order as may be appropriate.'" *Id.* at *6 (internal citation omitted). The district court further concluded that even without such an express retention provision, the result would likely be the same: "Even if the Protective Order here did not explicitly provide for retention of jurisdiction, this Court would in all likelihood retain the power to supervise disclosure of documents under the Protective Order and modify its terms, if appropriate." *Id.* (citing ***Gambale***, 377 F.3d at 141). The district court ultimately ruled that the protective order should remain in place, especially given the volume of documents produced by the defendants compared to the relatively meager discovery provided by the plaintiff. ***Wolters Kluwer***, 2007 WL 1498114, at *9. Thus, the decision in ***Wolters Kluwer*** highlights the fact that a court's jurisdiction to continue a previously entered protective order is not terminated by the voluntary dismissal of the action by the plaintiff. *See also* ***Grundberg v. Upjohn Co.***, 140 F.R.D. 459, 462 (D. Utah 1991) (noting that the trial court's protective order remained "in full force and effect" notwithstanding the "voluntary and unconditional" dismissal of the action).

Because Rule 26.03 is substantially similar to its federal counterpart, we agree with the "seem[ing] unanim[ity]" of the federal courts that protective orders may be extended even after dismissal of the underlying actions. *Liggett*, 858 F.2d at 782. In fact, nothing in our research or pointed out by Mr. Goetz indicates that the trial court's jurisdiction in this regard is in any way curtailed simply because the plaintiff chose to voluntarily dismiss the lawsuit. As illustrated by the *Wolters Kluwer* case, a voluntary dismissal may take place after extensive discovery has been exchanged; while the voluntary dismissal concludes the case, it is impossible to "unring the proverbial bell" that potentially damaging and confidential documents were exchanged. *Dispatch Printing Co. v. Recovery Ltd. P'ship*, 2006-Ohio-1347, ¶ 13, 166 Ohio App. 3d 118, 123, 849 N.E.2d 297, 301. Indeed, such a consideration is even more likely to be relevant with regard to a nonsuit taken under Rule 41.01(1) because "the availability of nonsuit as of right [under Rule 41.01(1)] terminates at a considerably later procedural stage than under Federal Rule 41(a)(1)." *Lacy v. Cox*, 152 S.W.3d 480, 484–85 (Tenn. 2004). Accordingly, the policy underlying protective orders is furthered by allowing such protection to extend beyond the conclusion of the case, regardless of the form that dismissal takes. *See Ballard*, 924 S.W.2d at 658 (noting that Rule 26.03 is "intended to offer litigants a measure of privacy").

Furthermore, while this is an issue of first impression, our holding fully comports with Tennessee law. As previously discussed, the Tennessee Supreme Court has specifically held that trial courts retain power to modify protective orders. *See Ballard*, 924 S.W.2d at 658. In addition, the Tennessee Supreme Court has held that a nonsuit does not take effect until the entry of the order of nonsuit, rather than at the time the notice of voluntary dismissal is filed. *See Green*, 101 S.W.3d at 419–20. Accordingly, the notice of nonsuit does not immediately divest the trial court of jurisdiction to enter further orders in the case, including orders of protection. Moreover, to allow a trial court to extend a previously entered protective order once the litigation is concluded harmonizes with this Court's holding that the trial court retains jurisdiction to grant a motion that was pending prior to the filing of plaintiff's notice of voluntary dismissal. *See Salsman*, 2002 WL 1838135, at *4. Because a proper case was pending at the time both the initial protective order was issued and at the time the trial court entered its ruling extending the order beyond the dismissal of this lawsuit, this situation is simply not analogous to previous cases wherein this Court held that the trial court lacked subject matter jurisdiction to enter a protective order. *See Adams*, 2002 WL 192575, at *6 (holding that the trial court lacked subject matter jurisdiction because no case had ever been pending before the court from which jurisdiction could attach). Where, as here, the trial court has previously entered a protective order that is not to terminate until further order of the court, the trial court retains jurisdiction to continue such order despite the fact that the plaintiff nonsuits the underlying litigation. To hold otherwise would be to limit not only the protection offered by Rule 26.03 but also the court's "inherent supervisory authority over its own records and files." *In re NHC-Nashville*, 293 S.W.3d at 561. In the absence

of any law suggesting otherwise, we conclude that such limitation on the trial court's inherent power is not mandated by the plaintiff's choice to nonsuit his or her case.

Here, the trial court entered a protective order on February 18, 2011, providing specific protections regarding the dissemination of information exchanged during the discovery phase of this case. Based on the Tennessee Supreme Court's holding in ***Ballard*** and the foregoing discussion, the trial court retained jurisdiction to extend and modify the protective order under appropriate circumstances notwithstanding Appellees' choice to voluntarily dismiss their cause of action. As such, the trial court's March 9, 2012 order extending the initial protection order and the subsequent August 27, 2012 order amending the March 9, 2012 order were not void on their face.

Mr. Goetz nevertheless argues that the trial court erred in its August 27, 2012 order because it "applied the standard for a Rule 26.03 protective order but granted the relief of a permanent injunction[.]" According to Mr. Goetz, the trial court's order was overly broad because it applied not only to information gleaned through discovery but also to "facts known to [Mr.] Goetz long before discovery began." Mr. Goetz further contends that the trial court's order improperly restricts his First Amendment free speech rights.  Regardless of whether Mr. Goetz is correct in his characterization of the scope of the trial court's order, we simply cannot address this issue in this appeal. As previously discussed, the order that Mr. Goetz is seeking to appeal was entered on August 27, 2012. The underlying matter was concluded by this order and Mr. Goetz was therefore required to file a notice of appeal within thirty days of this order if he wished to challenge it. *See **American Steinwinter***, 964 S.W.2d at 571. Mr. Goetz, however, chose not to file a timely appeal of this order but instead waited over two years to raise this argument.

Given Mr. Goetz's substantial delay in raising this issue, we simply have no jurisdiction to consider it. As previously discussed, unless an interlocutory or extraordinary appeal is granted by this Court, our jurisdiction is conditioned on a timely filed notice of appeal, which may not be extended or waived. ***Id.*** Unlike Mr. Goetz's argument that the trial court lacked jurisdiction to enter the protective order, Mr. Goetz's argument concerning the scope of the protective order does not concern the trial court's subject matter jurisdiction. In other words, even if Mr. Goetz is correct that the trial court improperly included information that should not have been subject to the protective order or applied an incorrect standard in extending the protective order, these considerations would not render the protective order void. As the Tennessee Supreme Court explained:

> "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, [the] exception to finality would swallow the rule." ***United Student Aid Funds, Inc. v. Espinosa***, 559 U.S. 260, 270, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (internal citation omitted). A judgment rendered by a court lacking either personal or subject matter jurisdiction is void. ***Ins. Corp. of Ireland***, 456 U.S. at 694, 102 S.Ct.

2099; ***Hood v. Jenkins***, 432 S.W.3d 814, 825 (Tenn.2013); ***Gentry v. Gentry***, 924 S.W.2d 678, 680 (Tenn.1996). Nevertheless, a judgment of a court of general jurisdiction is presumed to be valid and will be held void only when "its invalidity is disclosed by the face of that judgment, or in the record of the case in which that judgment was rendered." ***Giles v. State ex rel. Giles***, 191 Tenn. 538, 235 S.W.2d 24, 28 (1950)[.]

***Turner***, 473 S.W.3d at 270 (footnote omitted). Consequently, "a judgment is not subject to collateral attack for mere errors or irregularities committed by the court in the exercise of its jurisdiction. Errors other than lack of jurisdiction render the judgment merely voidable, and a voidable judgment can only be challenged on direct appeal." ***Hood v. Jenkins***, 432 S.W.3d 814, 825 (Tenn. 2013) (quoting ***Cumberland Bank v. Smith***, 43 S.W.3d 908, 910 (Tenn. Ct. App. 2000)). Here, we have previously determined that the trial court retained jurisdiction to extend its protective order beyond the voluntary dismissal of the underlying lawsuit. Mr. Goetz has alleged no other jurisdictional infirmities that would render the trial court's August 27, 2012 order void. Where Mr. Goetz only seeks to correct "mere errors or irregularities committed by the court in the exercise of its jurisdiction," he was required to directly appeal the trial court's order to address those alleged errors. ***Hood***, 432 S.W.3d at 825 (quoting ***Cumberland Bank***, 43 S.W.3d at 910). Because Mr. Goetz did not directly appeal but instead raised this argument over two years after the August 27, 2012 order became final, we simply have no jurisdiction to correct the alleged errors.

### III.

Mr. Goetz finally argues that, if the trial court had continuing jurisdiction to extend the protective order notwithstanding Appellees' nonsuit, the trial court retained jurisdiction to consider a petition to modify the protective order and erred in refusing to entertain evidence on the subject. We agree. As we have noted, the Tennessee Supreme Court has held that the trial court "has power" to modify an existing protective order. *See **Ballard***, 924 S.W.2d at 658. If the trial court's jurisdiction to extend an existing protective order is not terminated by the dismissal of the underlying cause of action, it follows that the trial court's well-settled power to modify a protective order extends for the life of the protective order. Appellees apparently concede that the trial court had the power to modify its protective order. Appellees assert, however, that the trial court did not err in refusing Mr. Goetz' request because: (1) his motion did not actually seek modification but clarification on the scope of the existing order; and (2) the trial court properly exercised its discretion in "weigh[ing] [] the competing needs and interests of the parties" to deny modification. ***Id.*** at 661.

The Tennessee Supreme Court in ***Ballard v. Herzkle*** outlined the appropriate standard trial court's must consider when a party seeks an initial protective order and when a party thereafter seeks to modify a protective order already in place. *See **Ballard***, 924 S.W.2d at 658–59. As to an initial order, the trial court must consider "whether good

cause has been established for a protective order" by "balanc[ing] one party's need for information against the injury that would allegedly result if disclosure is compelled." *Id.* at 658. The Court outlined factors that both weigh in favor and against a finding of good cause, including the identity of the parties, whether the information at issue is a matter of public or private concern, and whether disclosure would result in serious harm or embarrassment to one party. *Id.* at 658–59. Regardless of the trial court's ultimate decision to grant or deny the protective order, "the ultimate decision . . . is entrusted to the sound discretion of the trial court and it will not be reversed on appeal, absent a showing of abuse of discretion." *Id.* at 659.

The standard for modifying a protective order adopted by the Tennessee Supreme Court in *Ballard* is "a derivative of the standard governing the 'good cause' analysis" outlined above. *Id.* As such, "once a party moves to modify a protective order, a trial court must balance the factors initially considered when determining good cause, and in addition, consider the reliance of the original parties to the order, to determine whether good cause still exists for the order." *Id.* at 660. As the *Ballard* Court explained:

> [I]f access to protected materials can be granted without causing harm to legitimate privacy interests, access should be granted. Unless the motion seeks to modify a blanket protective order, the movant has the burden of establishing that the need for access to the materials outweighs the privacy concerns. . . . When modification of a blanket protective order is sought, the party seeking to maintain confidentiality must designate the documents alleged to be confidential and then establish that good cause exists with respect to those documents.

*Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3rd Cir. 1994)).

In his May 22, 2015 motion to modify the protective order, Mr. Goetz asserted that circumstances had changes such that the protective order was no longer necessary. Specifically, he asserted that Appellees had moved out-of-state reducing the likelihood that their children would be harmed by dissemination of the protected documents and that the protective order had prevented Mr. Goetz from clearing his name after Appellees' lawsuit was voluntarily dismissed. Although Mr. Goetz specifically requested a hearing to present evidence, the trial court denied him the opportunity. Instead, the trial court's order denying Mr. Goetz's motion for modification addresses none of his allegations regarding changed circumstances or the good cause standard articulated in *Ballard*. Rather, the trial court simply dismissed Mr. Goetz's petition on the basis of res judicata.

Respectfully, the trial court erred in this respect. It is well-settled that where a trial court's orders are subject to modification and a party establishes a change in circumstances sufficient to support modification, the doctrine of res judicata will not serve as a bar to modification. *See, e.g.*, *In re E.J.M.*, 259 S.W.3d 124, 136 (Tenn. Ct. App. 2007) ("Custody orders are res judicata and cannot be modified unless there has

been a material change in circumstances that makes a change of custody in the child's best interest."). Because modification of protective orders has been expressly authorized by our supreme court, res judicata will not serve as a bar to modification so long as the movant can show the quantum of proof required to support modification. *See Ballard*, 924 S.W.2d at 658. The trial court therefore erred in refusing to even consider Mr. Goetz's proof to determine whether a modification was warranted under the standard articulated in **Ballard**. Consequently, we vacate the trial court's order denying Mr. Goetz's requested modification and remand for further proceedings to determine whether modification is warranted pursuant to the Tennessee Supreme Court's directives in **Ballard**. We note that this Court has consistently held that Rule 52.01 of the Tennessee Rules of Civil Procedure requiring trial courts to make findings of fact and conclusions of law in bench trials is applicable in modification of child custody and visitation proceedings. *See, e.g., Sisco v. Howard*, No. M2015-01928-COA-R3-CV, 2016 WL 7190899, at *2 (Tenn. Ct. App. Dec. 12, 2016) (involving a modification of the parties' parenting plan) (citing Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.")); *In re Teven A.*, No. M2013-02519-COA-R3-JV, 2014 WL 7419292, at *1 (Tenn. Ct. App. Dec. 29, 2014) (same); *Aragon v. Aragon*, No. M2013-01962-COA-R3-CV, 2014 WL 1607350, at *1 (Tenn. Ct. App. Apr. 21, 2014) (same). Accordingly, we likewise direct the trial court to make appropriate findings of fact and conclusions of law to support its ruling on remand.

## CONCLUSION

The judgment of the Circuit Court of Shelby County is affirmed in part, vacated in part, and remanded for further proceedings, such as an evidentiary hearing, as may be necessary and is consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant William Goetz, and his surety, and one-half to Appellees Donel Autin and Dana Autin, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE