IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2023

**J.E.T., INC., d/b/a UPS STORE v. RON HASTY**

**Appeal from the Circuit Court for Davidson County**
No. 21C642  Lynne T. Ingram, Judge
_____

**No. M2023-00253-COA-R3-CV**
_____

A tenant sued its landlord for allegedly breaching the parties' lease agreement. The tenant, however, failed to comply with the parties' discovery schedule. After conferring, the parties established a new discovery deadline, agreed that failure to meet the deadline would result in dismissal with prejudice, and filed an agreed order to that effect, which was approved by the trial court. The landlord asserted that the tenant failed to meet the new deadline and sought dismissal with prejudice. A hearing was scheduled. Before the hearing, the tenant filed a notice nonsuiting the case, and the trial court granted the tenant a voluntary dismissal without prejudice. The landlord filed a motion to alter or amend, arguing the dismissal should have been with prejudice. The trial court denied that motion. The landlord appeals. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

JEFFREY USMAN, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and CARMA DENNIS MCGEE, JJ., joined.

Seth McInteer and Howell O'Rear, Nashville, Tennessee, for the appellant, Ronald Hasty.

Randall N. Songstad and Ronald L. Harper, Memphis, Tennessee, for the appellee, J.E.T., Inc., d/b/a UPS Store.

**OPINION**

I.

Appellant Ron Hasty owns real property at 707 Main Street in Nashville, Tennessee. In April 2017, Mr. Hasty agreed to lease commercial space to the Appellee J.E.T.

Incorporated (J.E.T.), a Tennessee corporation. The parties' lease included a ten-year term and renewal options that could extend the term for an additional ten years.

In March 2020, a series of tornadoes ravaged Middle Tennessee.[1] Mr. Hasty's property sustained significant damage. The storm compromised the roof, leading to water leakage and prolonged power outages. Following delays in repairs, Mr. Hasty asked J.E.T. to temporarily vacate the property. Despite having repeatedly assured J.E.T. that this would only be a temporary arrangement, Mr. Hasty provided notice that this action would be permanent, citing a provision in the parties' lease agreement that allowed Mr. Hasty to terminate the lease if "the Premises are damaged but not wholly destroyed" by a storm.

J.E.T. objected and filed a complaint in Davidson County Chancery Court in April 2021. The company alleged that Mr. Hasty breached the parties' lease agreement and sought compensatory damages "in an amount not to exceed $3,500,000.00" as well as attorney's fees. Mr. Hasty denied breaching the lease agreement, contending that his conduct was sanctioned by the contract's plain language.

This appeal, however, does not relate to the merits of parties' divergent interpretations of the lease agreement, but instead their actions during discovery. On August 8, 2022, Mr. Hasty served J.E.T. with written discovery requests, including interrogatories and requests for production. J.E.T. does not dispute that the deadline to respond to these written discovery requests was September 7, 2022, nor does it assert that it complied with that deadline. J.E.T. also does not dispute that it failed to respond to a September 23, 2022 email from Mr. Hasty's counsel concerning J.E.T.'s noncompliance. When Mr. Hasty contacted J.E.T.'s counsel on October 3, 2022, regarding the company's failure to respond to the September 23, 2022 email, J.E.T. asked Mr. Hasty if he would allow the company to respond by October 11, 2022. Mr. Hasty agreed to this extension; nevertheless, J.E.T. still did not submit the required documents by this new deadline.

On October 12, 2022, Mr. Hasty's counsel reached out to J.E.T. once again. The parties disagree about the exact nature of this discussion. According to Mr. Hasty, "the parties entered into a binding agreement regarding an additional extension of time . . . and the consequence of [J.E.T.'s] failure to produce responses by the agreed date." Mr. Hasty states that the parties agreed to a twenty-day time horizon and that another failure to comply by J.E.T. would result in a dismissal with prejudice. J.E.T. disagrees with the characterization of this conversation as creating a "binding agreement."

J.E.T., however, concedes that "[i]t was understood by both parties that an Agreed

---

[1] *March 2-3, 2020 Tornadoes*, National Weather Service (last updated Feb. 24, 2021), https://www.weather.gov/ohx/20200303. According to the National Weather Service, the severe weather event spawned ten tornadoes, which constituted the worst tornado outbreak in Tennessee in nearly a decade. *Id.*

Order would be entered reflecting these terms." The Agreed Order J.E.T. references, which both parties signed and the trial court adopted, reads as follows:

> [J.E.T.'s] counsel called [Mr. Hasty's] counsel on October 12, 2022. During that call, the parties agreed that [J.E.T.] would be given an additional 20 days from October 12, 2022, to produce the responses to the Interrogatories and Requests for Production and that, if [J.E.T.] did not produce responses within that 20-day period, [J.E.T.'s] Complaint in this matter would be dismissed with prejudice. The parties agreed to the entry of an order reflecting that agreement.
>
> It is therefore ORDERED that:
>
> . . .
>
> (2)     If [J.E.T.] has not served Defendant with responses and responsive documents by or before November 1, 2022, the Court will enter an order dismissing [J.E.T.'s] Complaint with prejudice.

With J.E.T. allegedly failing to meet the agreed-upon deadline, Mr. Hasty filed a "Motion for Order Dismissing Case with Prejudice" on December 2, 2022. In support thereof, Mr. Hasty relied upon the parties' agreement as reflected in the Agreed Order. Mr. Hasty represented to the trial court that J.E.T. failed to honor the twenty-day production deadline, though he did explain that his counsel "receive[d] a package . . . ostensibly mailed on October 31, 2022 . . . containing several hard copies of documents and a flash drive containing several digital copies." This package, Mr. Hasty submitted, did not contain any written responses to his interrogatories or an explanation of the package's contents. "[B]ecause the documents contain no other organization or notation identifying the specific Requests to which the documents respond, it is virtually impossible for [Mr. Hasty] to determine or articulate the deficiency of the documents actually produced," he argued. Consistent with the terms of the parties' agreement as reflected in the Agreed Order, Mr. Hasty asked the trial court to dismiss J.E.T.'s lawsuit with prejudice. A hearing was set for December 16, 2022.

On December 12, 2022—four days before the scheduled hearing on Mr. Hasty's motion—J.E.T. submitted a notice of voluntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.01. J.E.T. noted that Mr. Hasty had not filed a motion for summary judgment and that the company had not previously given notice of a voluntary dismissal. Accordingly, J.E.T. asserted that it was entitled to a dismissal without prejudice under Rule 41.01. The trial court granted J.E.T. a voluntary dismissal without prejudice the same day Mr. Hasty's motion to have J.E.T.'s case dismissed with prejudice was set to be heard.

Mr. Hasty filed a motion to alter or amend under Tennessee Rule of Civil Procedure

59.04. He argued that the parties agreed to a dismissal with prejudice, as evidenced by the trial court's Agreed Order, in the event that J.E.T. did not honor the twenty-day discovery deadline extension established on October 12, 2022. Mr. Hasty asserted that "[t]he Parties' agreement and the agreed order precluded Plaintiff J.E.T. from taking a voluntary nonsuit without prejudice." Asserting that J.E.T. failed to adequately produce discovery responses by the deadline, Mr. Hasty argued that a contractual right to dismissal with prejudice "vested" on November 1, 2022, and that the vested rights exception to Rule 41.01 barred J.E.T. from a voluntary dismissal without prejudice. Mr. Hasty also argued that various contract law principles such as the doctrine of *volenti non fit injuria*, meaning "he who consents to what is done cannot complain of it," also made granting a voluntary dismissal without prejudice inappropriate.

J.E.T. responded by invoking the plain text of Rule 41.01, which does not mention a party's vested rights. It also noted that Mr. Hasty had not filed a motion for summary judgment before J.E.T. requested a voluntary dismissal without prejudice, which is an express limitation under Rule 41.01 that is inapplicable to the present case. J.E.T. also argued that Mr. Hasty "is attempting to turn a Consent Order into a binding contract and apply contractual principles to a simple Order that was substantially complied with."

The trial court denied Mr. Hasty's motion to alter or amend without addressing the merits of his arguments. Mr. Hasty appeals, presenting three issues for review:

1. Whether the trial court erred in allowing [J.E.T.] to voluntarily dismiss the Complaint *without prejudice* when doing so deprived [Mr. Hasty] of a right that vested during the pendency of the case.

2. Whether the Parties' agreement, memorialized in the Agreed Order, executed by both attorneys for the Parties and adopted and entered as an order of the trial court, precluded [J.E.T.] from voluntarily dismissing its Complaint *without prejudice*.

3. Whether the trial court erred in failing to enforce the Parties' agreement and the trial court's November 14, 2022 Order, requiring the dismissal of [J.E.T.'s] Complaint *with prejudice*.

(Emphasis in original). In response, J.E.T. argues in support of the trial court's decision to permit it to voluntarily dismiss without prejudice.

II.

Pursuant to Tennessee Rule of Civil Procedure 41.01, "the general rule is that a party has a free and unrestricted right to voluntarily dismiss an action until trial." *Britt v. Usery*, No. W2022-00256-COA-R3-CV, 2024 WL 195879, at *3 (Tenn. Ct. App. Jan. 18, 2024). Rule 41.01 states:

- 4 -

Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties . . . .

Tenn. R. Civ. P. 41.01(1). Accordingly, the text of Rule 41.01 creates four exceptions to the expansive right to nonsuit. Rule 23.05 places restrictions on voluntary nonsuits in class action lawsuits, Rule 23.06 does the same for derivative actions by shareholders, and Rule 66 applies when a receiver has been appointed. Additionally, a party does not have a right to take a voluntary nonsuit in cases where the opposing party's motion for summary judgment is pending.[2]

The Tennessee Supreme Court in *Lacy v. Cox* noted three other limitations on the right to nonsuit. 152 S.W.3d 480, 484 (Tenn. 2004). In addition to the express exceptions in Rule 41.01(1), the *Lacy* Court indicated that there is

an implied exception which prohibits nonsuit when it would deprive the plaintiff of some vested right. . . . [Additionally,] [a] plaintiff is further limited to taking no more than two nonsuits without prejudice, Tenn. R. Civ. P. 41.01(2), and nonsuit cannot be taken more than one year after an initial dismissal.

*Id.*

Insofar as J.E.T. implies that deprivation of vested rights imposes no limitation upon its right to nonsuit without prejudice, the Tennessee Supreme Court has plainly indicated to the contrary. The Tennessee Supreme Court declared that "[t]hough not stated in the rule, the right of plaintiff to a nonsuit is subject to the further restriction that the granting of the nonsuit will not deprive the defendant of some right that became vested during the pendency of the case." *Anderson v. Smith*, 521 S.W.2d 787, 790 (Tenn. 1975). The existence of this exception has been repeatedly recognized by the Tennessee Supreme Court and this court. *See, e.g.*, *Lacy*, 152 S.W.3d at 484; *Weedman v. Searcy*, 781 S.W.2d 855, 856 (Tenn. 1989); *Autin v. Goetz*, 524 S.W.3d 617, 631 (Tenn. Ct. App. 2017); *Ewan v. Hardison L. Firm*, 465 S.W.3d 124, 130 (Tenn. Ct. App. 2014).

---

[2] A pending motion for summary judgment removes the ability of a plaintiff to take a voluntary dismissal as a matter of right, but the trial court may still permit in appropriate circumstances a voluntary dismissal while a summary judgment motion is pending. *See, e.g.*, *Stewart v. Univ. of Tenn.*, 519 S.W.2d 591, 593 (Tenn. 1974); *Autin v. Goetz*, 524 S.W.3d 617, 631 (Tenn. Ct. App. 2017); *Ewan v. Hardison L. Firm*, 465 S.W.3d 124, 136 (Tenn. Ct. App. 2014).

Relying upon the vested rights exception, Mr. Hasty contends that dismissal with prejudice is required. Mr. Hasty argues that his vested right arises from the Agreed Order and the occurrence of the triggering/vesting condition provided for therein. According to Mr. Hasty, J.E.T.'s failure to meet the extended discovery deadline triggered his right to a dismissal with prejudice, which he sought via a motion filed with the trial court. His basis for arguing that the Agreed Order creates a vested right that limits J.E.T.'s right to nonsuit its case without prejudice is driven by his contention that the parties' agreement, which was approved of by the court, is contractual in nature. Mr. Hasty does not argue that any other exceptions are applicable to deprive J.E.T. of its right to nonsuit. In response, J.E.T. argues that the Agreed Order that was approved by the trial court is not contractual in nature and does not create a vested right.

J.E.T. contends, but does not offer support for its proposition, that agreed orders are not contractual in nature.[3] Tennessee courts have, in fact, viewed agreed orders that have been approved by courts as being contractual in nature. For example, this court has stated that "[a]n agreed order is a contract and its interpretation is governed by the laws of contract." *In re Est. of Diviney*, No. M-2017-00739-COA-R3-CV, 2017 WL 5712904, at *5 (Tenn. Ct. App. Nov. 28, 2017). Similarly, we have observed that "[a]n agreed order is a binding contract and represents the achievement of an amicable result to pending litigation." *Demquarter Healthcare Invs., L.P. v. OP Chattanooga, LLC*, No. E-2016-00031-COA-R3-CV, 2016 WL 7479143, at *7 (Tenn. Ct. App. Dec. 29, 2016) (quotation omitted). Additionally, we have described an agreed order as "a contract between parties to litigation." *City of Gatlinburg v. Kaplow*, No. E2013-01941-COA-R3CV, 2014 WL 2194517, at *5 (Tenn. Ct. App. May 27, 2014) (quoting *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000)). Understanding agreed orders approved by a court as being essentially contractual in nature is a widely shared conventional understanding. *See, e.g.*, 56 Am. Jur. 2d Motions, Rules, and Orders § 44 ("An agreed order . . . is essentially a contract, although it is given the same force and effect as judgments rendered after litigation"); 60 C.J.S. Motions and Orders § 4 ("A[n] . . . agreed order . . . is not an adjudication of the parties' rights but, rather, a record of their private, contractual agreement that, once entered, is generally binding on the parties"). In other words, J.E.T.'s contention that agreed orders entered by the court are not contractual in nature is not well grounded.

The parties' duel over the question of whether Mr. Hasty has a vested right that limits J.E.T.'s ability to voluntarily dismiss its case without prejudice is primarily fought over the importance of this court's opinion in *Miller v. American Association, Incorporated*. 6 Tenn. App. 506, 513 (Tenn. Ct. App. 1927). Mr. Hasty notes that *Miller*

---

[3] J.E.T. does not dispute that agreements between the parties related to the litigation that are contractual in nature can form the basis for a finding the existence of vested rights that constrain the ability to dismiss a case without prejudice. *See, e.g.*, *Shell v. Shell*, No. E2007-01209-COA-R3-CV, 2008 WL 2687529, at *3 & n.3 (Tenn. Ct. App. July 9, 2008) (finding a loss of a right to dismiss without prejudice in the wake of a mediated settlement agreement).

involved the imposition of a limitation upon voluntary dismissal without prejudice and argues that the circumstances of the *Miller* case are closely analogous to the present case. J.E.T. does not seek to distinguish *Miller* from the present case but instead contends that Miller is "obsolete case law from ninety-six (96) years ago," long before the adoption of Rule 41.01, which J.E.T. argues superseded the *Miller* decision.

In *Miller*, the complainant generally struggled with the discovery process as the case proceeded and had failed to depose three apparently important witnesses in the case. *See id*. at 507-12. In open court, the parties reached consensus for an agreed order that was approved by the court, which provided as follows:

> In this cause, it is agreed by all parties concerned that complainant, W. D. Miller may have thirty days further time from this date in which to take the depositions of Ben Sowders, Ben Davis and Surveyor Jones, and defendant will have fifteen days in which to take rebuttal proof. It is also agreed that this cause may be heard by the Chancellor on a day fixed by him at any time within sixty days from this date after time for taking the proof has expired.

*Id*. at 510. The trial court set a trial date and when it arrived the complainant in *Miller* sought to voluntarily dismiss his suit without prejudice. *Id*. at 510-11. The trial court declined to allow the complainant to do so

> for the reason that it was agreed in open court on October 11, 1926, that this cause, in consideration of the complainant being granted additional time in which to take proof that the cause would be tried at a time fixed by this court and the time having been fixed in pursuance of said order and agreement, this court being now of the opinion that complainant cannot now take a voluntary nonsuit over the objection of the defendant.

*Id*. at 510.

The complainant appealed, and this court affirmed the trial court. *Id*. at 513. We concluded "under these facts" that "the complainant was not entitled to dismiss his suit without prejudice." *Id*. at 512. This court indicated that the trial court quite rightly understood the complainant as having lost his right to voluntarily nonsuit without prejudice via the agreement and entry of an agreed order to that effect. *Id*. at 513. In reaching this conclusion, the *Miller* court drew upon *Jones v. Kimbro*, a mid-1840s decision of the Tennessee Supreme Court. 25 Tenn. 319 (1845). In *Jones v. Kimbro*, the plaintiff was unprepared for trial. *Id.* at 320. The parties reached an agreement that was entered upon the trial docket that "[i]f the papers in this case are not found and the cause ready for trial at the next term, it will then be dismissed." *Id.* When the case next appeared on the trial docket, the plaintiff remained unprepared and sought further delay. *Id.* The trial court rejected the attempt and dismissed the case pursuant to the parties' agreement; the plaintiff

appealed. *Id.* The Tennessee Supreme Court affirmed the trial court, observing that

> [the agreement] was made, it is obvious, to avoid a non-suit, or obtain a
> continuance. The agreement was proved and admitted. Good faith required
> its enforcement; and the power as well as the duty of the court to enforce fair
> and reasonable agreements, relating to the conduct and despatch of business
> before it, is necessarily incident to the nature of its position, and required to
> ensure the orderly and faithful determination of causes.

*Id*. at 321.

J.E.T. is right that this court's decision in *Miller* is more than ninety years old and that the *Miller* decision predates the adoption of Rule 41.01. With regard to the latter point, though the origins of the right to nonsuit trace back to the common law, nonsuits had been centrally provided for and framed by statute in Tennessee since the first decade of statehood and remained so until these statutes were replaced by Rule 41.01 in the early 1970s. *See Britt*, 2024 WL 195879, at *4 & n.3. The problem for J.E.T. is that Rule 41.01 does not disturb the *Miller* decision. This conclusion is reflected in the Tennessee Supreme Court's embrace of the vested rights exception as an enduring implied exception to freely allowed nonsuits and its express indication that this exception survives the adoption of Rule 41.01. *See Lacy*, 152 S.W.3d at 484; *Anderson*, 521 S.W.2d at 790. In other words, it is not apparent how Rule 41.01 would disturb the *Miller* decision.

As for the age of the *Miller* decision itself, the passage of time *alone* does not drain from a precedent either its authority or its reason. After all, "[t]he practice of following precedent aims to prevent the passage of time from making a difference to the treatment of two disputes that are relevantly similar."[4] J.E.T. does not fully develop its argument for why this court should not adhere to prior precedent in this case, failing to indicate what changes time has wrought or unveiled that unsettle this prior precedent. The core rationale of *Miller* remains solid. A plaintiff struck a deal with the defendant buying an extension of time for discovery at the cost of foregoing the ability to have the case dismissed without prejudice, and that deal was approved by the trial court. Whether a plaintiff should have struck such a deal is not the question. Having done so and having received the benefit of the bargain, the plaintiff does not escape the terms of the agreement reached by the parties and approved by the court with entry of the agreed order. That rationale remains as sensible today as it was ninety-six years ago.[5]

---

[4] Sebastian Lewis, *Precedent and the Rule of Law*, 41 Oxford Journal of Legal Studies 873, 886 (2021).

[5] This is not a case that runs afoul of Justice Holmes' admonition that "[i]t is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 HARV. L. REV. 457, 469

Beyond dueling over *Miller*, J.E.T. also references this court's decision in *Oliver v. Hydro-Vac*, 873 S.W.2d 694 (Tenn. Ct. App. 1994), in support of its continuing ability to nonsuit. This court noted in *Oliver* that the mere possibility of being subject to another suit does not constitute sufficient prejudice to bar a party from being able to voluntarily dismiss without prejudice. *Id*. at 696. This is necessarily so as a contrary understanding would effectively defeat the ability to nonsuit in any case. Unlike the present case, the *Oliver* case did not involve an agreement to dismiss with prejudice; to the contrary, no agreement existed at all in *Oliver*. In other words, *Oliver* neither undermines the *Miller* decision nor speaks to the circumstances of the present case.

J.E.T. did not seek to voluntarily dismiss its case prior to the running of the extended time period for discovery that the parties agreed to, which was approved by the trial court, or prior to Mr. Hasty filing a motion seeking to have the case dismissed in accordance with the parties' agreement. Under these circumstances, if J.E.T. did not meet the terms of the parties' agreement, then Mr. Hasty has a vested right barring J.E.T. from obtaining a voluntary dismissal without prejudice. We reach this conclusion given that the parties agreed to a dismissal with prejudice should certain conditions be met, the agreement was approved by the trial court, those conditions that would trigger a dismissal with prejudice under the parties' agreement allegedly transpired, and Mr. Hasty sought dismissal pursuant to the terms of the agreement – all prior to J.E.T. seeking to voluntarily dismiss without prejudice.

IV.

As noted above, Mr. Hasty's right to a dismissal with prejudice is dependent upon the triggering conditions having occurred. J.E.T., however, insists in its briefing before this court, as it did before the trial court, that it complied with the parties' November 1, 2022 discovery deadline. Specifically, J.E.T. states on appeal, "Simply put, [Mr. Hasty] propounded discovery requests to [J.E.T.]. Despite [J.E.T.'s] best efforts, [Mr. Hasty] was less than satisfied with [J.E.T.'s] responses. [J.E.T.] can demonstrate that it responded to the discovery requests, just perhaps not to [Mr. Hasty's full satisfaction]."

The trial court did not make a finding as to whether J.E.T. complied with the terms of the parties' agreement as set forth in the Agreed Order. Given our conclusion that if the triggering condition occurred then the parties' agreement creates a vested right limiting J.E.T.'s ability to obtain a dismissal without prejudice, the question of whether J.E.T. complied with the terms of the Agreed Order becomes critical. The determination of whether to grant Mr. Hasty's motion for dismissal with prejudice rises and falls upon the question of whether J.E.T. satisfied the terms of the Agreed Order. Accordingly, we remand this case back to the trial court to determine whether J.E.T. complied with the terms

---

(1897).

of the parties' agreement as set forth in the Agreed Order.

V.

In considering the arguments advanced on appeal and for the reasons discussed above, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion. The costs of the appeal are taxed to the appellee, J.E.T., Inc. d/b/a UPS Store, for which execution may issue if necessary.

_____
JEFFREY USMAN, JUDGE